Keith Lefeall **EDWARDS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–92–128–CR.

Court of Appeals of Texas, Corpus Christi.

Nov. 30, 1993.

---

Stephen Lee, Galveston, for appellant.

Jim Mapel, Dist. Atty., Mary Peter Cudd, Asst. Dist. Atty., Angleton, for appellee.

Before NYE, C.J.,[1] and FEDERICO G. HINOJOSA, Jr. and DORSEY, JJ.

## *OPINION*

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant guilty of two counts of burglary of a habitation. Appellant pleaded true to the enhancement allegation and the court assessed punishment at 30 years' confinement. By three points of error, appellant challenges the sufficiency of the evidence, complains that the trial court erred by refusing to dismiss the indictment after he moved for a speedy trial, and complains that TEX.CODE CRIM.PROC.ANN. art. 17.151 (Vernon 1989) is unconstitutional as applied to him. We reverse in part and affirm in part.

Appellant allegedly participated in two burglaries in Pearland on February 13, 1991. Appellant allegedly rode in a small, black, hatchback automobile with two other men, and the group approached houses, broke through doors, and removed valuables. Neighbors saw the men enter the houses, did not recognize them, and called the owners and Sheriff's Department. Investigator Dorman Davidson responded to the calls, stopped a vehicle which matched the description of the suspects' vehicle a few minutes after receiving a report of another burglary in progress, found electronic equipment in the car, and arrested the occupants, including appellant.

On October 31, 1991, a grand jury indicted appellant for two counts of burglary. Appellant remained in jail until trial was held on January 27, 1992.

By his first point of error, appellant challenges the sufficiency of the evidence supporting the conviction. Specifically, he argues 1) that no witness could positively identify him either at trial or at the scene as someone they saw enter either one of the houses that were burglarized and 2) that the State presented no fingerprint or palmprint evidence to prove that he entered any such house. The State argues that the evidence is sufficient to support appellant's conviction as a party to the burglaries.

When we review the sufficiency of the evidence in a criminal case, we view all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Prophet v. State,* 815 S.W.2d 836, 837 (Tex. App.—Corpus Christi 1991, pet. ref'd). We also apply this standard to cases involving circumstantial evidence. *Earhart v. State,* 823 S.W.2d 607, 616 (Tex.Crim.App.1991); *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex. Crim.App.1983) (opinion on rehearing). We measure the sufficiency of the evidence against the indictment as incorporated into the jury charge. *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App.1982) (opinion on rehearing).

For a jury charge to authorize conviction as a party, the law of parties must be included in the application paragraph of the charge. *Jones v. State,* 815 S.W.2d 667, 669 (Tex.Crim.App.1991) (per curiam). When an appellant raises a sufficiency challenge to a conviction under a charge which does not include the law of parties in the application paragraph, a reviewing court must determine whether a rational trier of fact could determine beyond a reasonable doubt that the appellant's own conduct constituted the offense charged. *Walker v. State,* 823 S.W.2d 247, 249 (Tex.Crim.App.1991) (per curiam).

The essential elements of burglary are: 1) a person, 2) without the effective consent of the owner, 3) enters a habitation or building, and 4) either a) commits or attempts to commit theft or b) the entered habitation or building is not open to the public and the person has the intent to commit theft. TEX.PENAL CODE ANN. § 30.02(a) (Vernon 1989).

The State argues that the evidence is sufficient to support a conviction based on the law of parties. The application paragraph did not include the law of parties; therefore, we can find the evidence sufficient to support the conviction only if we find the evidence

---

1. Former Chief Justice, retired April 30, 1993.

establishes appellant's guilt through his own conduct beyond a reasonable doubt.

■ The State produced one witness who testified to the following. On the morning of February 13, 1991, she saw a black hatchback car containing three black males that "had backed up in the driveway" of a residence at 2483 Woodbury in Pearland. She saw the driver, wearing white tennis shoes, a dark pair of shorts and a blue T-shirt, exit the vehicle, walk toward the front door of the house, and disappear from view. She called the home's owners at their place of work, learned that no one had permission to be at the house, and called the Sheriff's department. After placing these telephone calls, she saw a passenger, wearing a white T-shirt, exit the car and also approach the front door of the house. A third passenger, wearing a dark T-shirt, remained in the car. She could not see the front door of the residence from where she was standing. The two men who approached the front door of the house were out of her sight "[n]o longer than a minute, maybe a minute or a little less, but it wasn't very long." The driver and the passenger who was wearing the white T-shirt then returned to the car. The driver was carrying something she could not identify, and he placed it in the car. The three men then drove away, and the witness could make out three digits of the license plate, a "4," a "Y," and a "0." She could not identify appellant as an occupant of the car.

One of the owners testified that after the witness called them they left work for home. They found the front door kicked open, their television and compact disc player missing, and items overturned or broken. They found an oil leak in the driveway, but they always parked their cars in the garage. Neither one of the owners had given anyone permission to enter their house.

While Investigator Davidson took the witness's report, he received a report of a second burglary in progress at 4618 Pecan Grove in Pearland. Davidson drove to the scene and pursued a vehicle described by the dispatcher and similar to the one described by the witness to the first burglary.

■ A witness to the second burglary testified as follows. He looked out from his kitchen window sometime between 12:00 noon and 12:30 p.m. and saw three black males carrying objects to a car parked at 4618 Pecan Grove. The men were too far away for the witness to make out their faces. The three men put the objects into the rear of a dark hatchback car. The witness called the Sheriff's department and observed the activity for five to seven minutes. He identified the objects as "hand items to be carried out and stacked up and they would keep moving." On cross-examination, he stated that he saw all three men carrying objects in and out of the house.

The owner of the house on Pecan Grove testified that his realtor called to inform him of the burglary and that he called the witness before returning home. He discovered that his door had been kicked in, his camera, television, stereo receiver, speakers, video cassette recorder, compact disc player, and audio tape player were missing, and that objects had been overturned. He also found an oil leak in his driveway. He testified that he had not given anyone permission to enter his house and that none of his cars leaked oil.

Investigator Davidson testified that the witness to the first burglary stated that the car had a license plate which included the characters "4," "0," and "Y." He received a report of the second burglary, which included the burglars' last known direction, and headed to Cullen Boulevard thinking he could beat the suspects to that point. He arrived on Cullen and saw a black hatchback, license BTZ–40Y, with three black men in it and with an electric cord dangling from the hatch. Another officer arrived in a marked vehicle, and they stopped the hatchback within eight minutes of receiving the dispatch of the burglary in progress. The hatchback contained the items taken from the Pecan Grove house. Appellant was in the back seat, wearing a white T-shirt, and had his feet on the camera taken from the Pecan Grove house. The owner of the Pecan Grove house came to the scene of the arrest and identified the car's contents as belonging to him.

The witness to the Woodbury burglary also went to the scene of arrest, but could not identify appellant as one of the men she saw at the burglary. The witness did say, however, that appellant wore the same clothes as the passenger that she saw approach the front door of the house. At trial, neither the witness to the Woodbury burglary nor the witness to the Pecan Grove burglary could identify appellant as a person seen entering the homes.

The State also produced evidence that a palmprint taken from the Pecan Grove house matched the palmprint of one of the other suspects. Finally, the State produced evidence that appellant and the others offered no explanation for having possession of the items stolen from the Pecan Grove residence. Investigator Davidson identified appellant as one of the occupants of the hatchback he stopped.

In count one, appellant was charged with burglarizing the Pecan Grove residence. In count two, he was charged with burglarizing the Woodbury residence.

The evidence in the record is insufficient to establish appellant's guilt of burglary of the Woodbury residence. The State failed to produce sufficient evidence to establish the essential element of entry. No witness saw him enter or carry any objects from the house, and the State offered no physical evidence showing his actual presence in the house. He may have aided, encouraged, directed, solicited, or attempted to aid the burglary, and had the charge authorized conviction as a party, we would find the evidence, including the evidence of the other burglary, sufficient to support a conviction on the party theory. Since the law of parties was not included in the application paragraph, such acts do not authorize a conviction. While a jury might possibly infer entry from the mere fact that appellant temporarily disappeared from the witness's view, a rational trier of fact could not find entry beyond a reasonable doubt given the facts that the witness could not see the door, that appellant was out of sight for less than a minute, and that he carried nothing from the house.

We sustain appellant's first point of error with respect to the trial court's judgment on the second count of the indictment.

The State's witness to the Pecan Grove burglary testified that all three men entered the house and carried objects from it. The investigator from the Sheriff's Department stopped a vehicle matching the description of the suspects' vehicle, including color, style, and the three known characters of the license plate, within eight minutes of the report that a burglary was in progress. The stopped vehicle had three occupants. Appellant was in the vehicle, which contained items identified as those taken from the Pecan Grove residence. The witness to the Woodbury burglary said that appellant had the same clothes as the man she saw approach that home. Another occupant of the car had a palmprint matching one found at the scene of the Pecan Grove burglary. Both burglarized houses had oil stains on their driveways, and the black hatchback leaked oil.

The unexplained possession of stolen property, the presence in the vehicle identified as that of the burglars, and appellant's wearing clothes matching that of a person seen at the scene of a nearby burglary which took place within the hour of arrest is sufficient to establish appellant as one of the persons seen entering the Pecan Grove house and carrying objects from it. The testimony from the owner that no one had permission to enter and remove objects is sufficient to establish burglary.

We overrule appellant's first point of error with respect to the trial court's judgment on the first count of the indictment.

By his second point of error, appellant complains that he was denied a speedy trial, a right conferred by both the United States and Texas constitutions. He contends that the trial court erred by failing to dismiss the indictment on his motion.

The United States Supreme Court has developed a four-part balancing test to be used when determining whether an accused has been denied a speedy trial:

1) the length of the delay,
2) the reason for the delay,

3) the defendant's assertion of his speedy trial right, and

4) prejudice to the defendant from the delay.

*Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The Supreme Court stated:

the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial.

*Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. The Court of Criminal Appeals has applied the *Barker* balancing test in determining whether a defendant has been denied his state speedy trial right. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App.1992). The delay in commencement of the trial must be of sufficient length to be presumptively prejudicial before a review of the remaining three factors is triggered. *Barker,* 407 U.S. at 532 n. 31, 92 S.Ct. at 2192 n. 31.

█ The record reflects that over 11 months elapsed from the date of the appellant's arrest to the date of the trial, yet no reason for the delay is apparent. Although there is no precise length of delay which automatically constitutes a violation of the right to a speedy trial, in the interest of justice, we will presume prejudice and review the facts of the case in light of the remaining three factors.

On December 9, 1991, appellant filed a motion for speedy trial. Appellant's motion stated that this case was set for trial on December 9, 1991, and asked the trial court to either dismiss the indictment or allow him to go to trial. In the motion and on appeal, appellant argues that he was indicted on three separate occasions for the same incidents. He also argues that since he was incarcerated from February 13, 1991 to the day of trial, he was hampered in his efforts to defend himself at trial. He contends that he filed numerous motions in which he asserted his right to a speedy trial.

No other speedy trial motions are contained in the record and appellant has produced no statement of facts from any hearing of such motions. Appellant was tried on January 27, 1992.

Since there appeared to be a question concerning the completeness of the appellate record, we referred the matter to the trial court for the limited purpose of determining whether the pretrial proceedings were recorded and whether the trial court could produce statements of facts of any motions for speedy trial. On September 20, 1993, the trial court responded to our request and filed its findings of fact and conclusions of law. The trial court found, after notice to all parties and hearing, that "[t]here are no records available to prepare a statement of facts for any motions for speedy trial."

The State argues that appellant has not presented a record supporting the allegations in the motion, that appellant was entitled to relief by a writ of habeas corpus but failed to seek such relief, and that the issue is now mooted by the conviction.

The record contains no evidence to support appellant's allegation that he filed numerous motions in which he asserted his right to a speedy trial. In addition, the record contains no evidence that appellant ever urged his December 9, 1991, motion to the trial court. *Vanderbilt v. State,* 629 S.W.2d 709, 717 (Tex.Crim.App.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Guzman v. State,* 732 S.W.2d 683, 686 (Tex. App.—Corpus Christi 1987, no pet.). The appellant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he was deprived of the right, but "failure to assert the right … make(s) it difficult for a defendant to prove he was denied a speedy trial." *Barker,* 407 U.S. at 531–32, 92 S.Ct. at 2193.

Appellant has not provided this court with any evidence that the trial court was ever made aware that he was asserting his right to a speedy trial. It is appellant's responsibility to establish a record supporting his claims. Mere assertions in a brief, not supported by evidence in the record, will not be considered on appeal. *Vanderbilt,* 629 S.W.2d at 717.

A defendant who invokes his right to a speedy trial is required to make some show-

ing that the delay has been prejudicial. *Chapman v. Evans,* 744 S.W.2d 133, 137 (Tex.Crim.App.1988); *Phillips v. State,* 650 S.W.2d 396, 401 (Tex.Crim.App.1983). "Prejudice ... should be assessed in the light of the [following] interests ... which the speedy trial right was designed to protect[:] (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

The record reflects that appellant was subject to pretrial incarceration. Appellant argues that he suffered "anxiety, concern, confusion, frustration, and depression." However, the record reflects that, other than filing a motion for speedy trial, he failed to assert his speedy trial right.

The record does not indicate a deliberate attempt by the prosecution to delay the proceedings. Even though appellant argues that the delay contributed to "a diminution of his ability to defend himself due to the erosion and obfuscation of eyewitness testimony," appellant fails to specifically show how his defense was impaired. We find no evidence in the record that appellant's defense was impaired as a result of the delay.

We hold that appellant failed to exercise diligence in asserting his right to a speedy trial and that he failed to show any prejudice from the delay. We overrule appellant's second point of error.

■ By his third point of error, appellant contends that TEX.CODE CRIM.PROC.ANN. art.

17.151, § 2(2) is unconstitutional because it denies him his due process rights under the United States and Texas constitutions, and violates TEX.CODE CRIM.PROC.ANN. art. 1.04.

We initially note that appellant's point of error is multifarious in nature, as it embraces more than one specific claim. Appellant did not brief and argue his claims independently. By failing to do so, appellant risks having this point of error overruled for inadequate briefing. *McCambridge v. State,* 712 S.W.2d 499, 501–502 n. 9 (Tex.Crim.App.1986). In the interest of justice we will consider this point.

Appellant contends that article 17.151, § 2(2) is unconstitutional because it denies him his due process rights.[2] Appellant argues that he was indicted on three separate occasions for the same incidents. Appellant further argues that the State delayed the trial against him for almost one year and did not indict him in this case until 8 months and 19 days after his arrest. Appellant asserts that the State's delaying tactics amounted to incarceration without a conviction or knowledge of the charges against him. The record does not reflect that appellant filed an application for writ of habeas corpus or that he requested release on personal recognizance bond or reduction of the amount of bail required.[3] *Cf. Ex parte McNeil,* 772 S.W.2d 488, 489–90 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding) (mandamus applicant appealing from habeas corpus proceeding released on bond in every cause arising from same alleged criminal episode).

---

2. Article 17.151 states in relevant part as follows:
   Sec. 1. A defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required, if the State is not ready for trial of the criminal action for which he is being detained within:
   (1) 90 days from the commencement of his detention if he is accused of a felony;
   Sec. 2. The provisions of this article do not apply to a defendant who is:
   (2) being detained pending trial of another accusation against him as to which the applicable period has not yet elapsed;

3. On June 30, 1993, we ordered the trial court to conduct a hearing for the limited purpose of determining whether pretrial proceedings held on October 31, 1991, and December 9, 1991, were recorded and whether statements of facts

could be prepared of those pretrial proceedings. The trial court complied with our order by holding a hearing on August 17, 1993, and by filing its findings of fact and conclusions of law on September 20, 1993.

During the August 17th hearing, appellant's counsel attempted to supplement the record without requesting leave of this court. Appellant's counsel asked that the trial court admit into evidence, for the first time, a docket sheet of another case which allegedly reflected that appellant had filed an Application for Writ of Habeas Corpus and a Motion for Release for Failure to Afford Trial within the time prescribed by TEX.CODE CRIM.PROC.ANN. art. 17.151. The docket sheet is not included in the statement of facts of the hearing.

To successfully challenge the constitutionality of a statute, appellant is required to show that it is unconstitutional as to him in his situation. *Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 494–95 (1989); *Bynum v. State*, 767 S.W.2d 769, 774 (Tex.Crim.App.1989). The facts of this case do not allow this court to review whether TEX.CODE CRIM.PROC.ANN. art. 17.151, § 2, unduly interferes with a uniquely judicial function, *i.e.*, setting bail. Appellant's conviction renders moot any complaint arising from his confinement in excess of the statutory period. *Martinez v. State*, 810 S.W.2d 428, 430 (Tex.App.—Houston [14th Dist.] 1991), *pet. dism'd*, 826 S.W.2d 620 (Tex.Crim.App.1992). *See Jones v. State*, 803 S.W.2d 712, 716 n. 3 (Tex.Crim.App.1991) (Court held article 17.151 does not unduly interfere with prosecutorial function in violation of separation of powers). We overrule appellant's third point of error.

As noted above, we sustain appellant's first point of error with respect to the trial court's judgment on the burglary alleged in the second count of the indictment. Since the trial court entered only one judgment and assessed punishment for both offenses at 30 years' confinement, rather than assessing punishment for each offense at 30 years and then ordering the sentences to run concurrently, we hold that the trial court must now reassess punishment for the burglary alleged in the first count of the indictment.

We AFFIRM that part of the trial court's judgment referring to appellant's conviction of the burglary alleged in the first count of the indictment, but REMAND the case to the trial court for reassessment of punishment only. We REVERSE that part of the trial court's judgment referring to the burglary alleged in the second count of the indictment and ORDER appellant ACQUITTED of count two.

NYE, C.J., not participating.